# United States Court of Appeals
## For the First Circuit

Nos. 10-1241, 10-1251

E.D., a minor, by and through his next Friend
and Parents Suzanne Doe and Robert Doe;
SUZANNE DOE; ROBERT DOE,

Plaintiffs, Appellants,

v.

NEWBURYPORT PUBLIC SCHOOLS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William J. Young,  U.S. District Judge]

Before

Torruella, Circuit Judge,
Souter, Associate Justice,[*]
and Boudin, Circuit Judge.

Michael J. Tuteur, with whom Laura E. Gibbs, Michael
Thompson, and Foley & Lardner LLP were on brief, for appellants.
Doris R. MacKenzie Ehrens, with whom Murphy, Hesse, Toomey &
Lehane, LLP was on brief, for appellee.

August 19, 2011

---

[*]     The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, <u>Associate Justice</u>.** This is an appeal by a boy, E.D., and his parents, Suzanne and Robert Doe, from orders of the district court in favor of the defendant, Newburyport Public Schools: summary judgement in no. 10-1241 and dismissal in no. 10-1251. In each case the plaintiffs made claims under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1482, which requires a responsible education authority to provide an Individualized Education Plan (IEP) for the benefit of any child with a disability as defined by the Act, 20 U.S.C. § 1401(3), to function as the blueprint for the required free, appropriate public education, 20 U.S.C. § 1401(9). In each case, the court's order was identical, save for the penultimate lines speaking, respectively, of dismissal and summary judgment. The court recited as a factual predicate a summary of the Does' claims (stated in the pleadings, that is, as is implied by the dismissal treatment of the reimbursement claim).

The dismissal order[1] disposed of the Does' claim for reimbursement of tuition in a private Connecticut school in which they enrolled their son. They say that they became obligated to make tuition payments due in advance while they were residents of Newburyport, Massachusetts, owing to Newburyport's failure to

---

[1] Newburyport argues that the order is properly understood as granting summary judgment. The judge, however, called it dismissal, and in any event, the distinction is irrelevant in dealing with the issue before us, as we explain further on.

provide an IEP in a timely way in anticipation of the 2009-10 school year.  When Newburyport refused to pay, the Does brought action under 20 U.S.C. § 1412(a)(10)(C)(ii).

The summary judgment for Newburyport responded to the Does' claim for costs including counsel fees under 20 U.S.C. § 1415(i)(3)(B) as prevailing parties at a hearing before the Massachusetts Bureau of Special Education Appeals.  The appeals board found a school selected by Newburyport in a proposed IEP to be inappropriate but also ordered consideration of other nearby public schools in place of the Connecticut private school proposed by the Does, where they ultimately enrolled E.D. on their own.

At the start of the controversy between the parties, the Does were undisputedly resident property owners of Newburyport. For the 2008-09 school year they enrolled the boy in a school in Stamford, Connecticut.  To be with him, his mother rented an apartment in Connecticut and on weekends returned to a Newburyport apartment where his father was living. As the start of school drew near in the fall of 2009, and the disagreement about an IEP and appropriate school placement persisted, the Does' income was insufficient to support two residences, so they gave up the Newburyport property and moved to Connecticut to be near the school in Greenwich where they had enrolled the boy in anticipation of that school year.

Although the hearing before the state Special Education Appeals board, and the dates on which they were obliged to make the advanced tuition payments, all predated their move from Newburyport, the district court regarded the subsequent change of residence as dispositive: "As the Does no longer reside in Newburyport, the Newburyport Public Schools are under no obligation to provide any educational or special educational facilities for Elliott Doe." The court cited a Massachusetts statute and two cases decided by the state board.

The Does understand the reasoning to be that the change of residence rendered each claim moot, and that is a fair characterization. On this de novo review of the purely legal issue, however, we think that the move to Connecticut did not moot the claims, though we express no opinion on the merits of either one (merits issues to which Newburyport devotes a substantial part of its brief).

So far as Newburyport defends the trial court's mootness ground for dismissing the reimbursement claim, its brief states the nub of its argument succinctly:

> Critical to the outcome in this case is the fact that it involved only prospective relief, the provision of FAPE [free appropriate public education] for the next school year. Newburyport could not deny Elliot FAPE for a school year which had not yet begun and past denial of FAPE was never at issue. There was no procedural violation because Newburyport had no obligation to draft an IEP for a non-resident and its position on the residency

> issue was reasonable and amply supported by BSEA case law. Moreover, even if Newburyport failed to draft an IEP or offer an appropriate placement in a timely manner, procedural violations warrant a remedy only if they result in a denial of FAPE. *See e.g.* <u>Roland M. v. Concord Public Schools</u>, 910 F.2d 983, 994, (1st Cir. 1009) [sic], <u>Murphy v. Timberlane Regional School District</u>, 22 F.3d 1191 (1st Cir. 1994).

This mischaracterizes both the Does' claim and the authority cited.

The reimbursement request is brought under 20 U.S.C. § 1412 (a)(10)(C)(ii):

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

The claim is that Newburyport did not make a free, appropriate education available to E.D. in a timely manner, as a consequence of which the Does had to take some action to ensure that their boy would have an appropriate place to go when the school year began. They say that the private Connecticut enrollment was suitable, that their unilateral action enrolling E.D. there was reasonable, and that the advance payments were due while they were still residents of Newburyport. The fact that the Does later moved owing to financial straits as Newburyport denied reimbursement and the

-5-

proceedings dragged on does not on its face moot these claims. They are addressed to the reviewing court's discretionary equitable power to award compensation for obligations said to have been reasonably incurred before the move.

Newburyport's closest pass at this reimbursement claim comes in its fall-back assertion that even if it failed to provide an IEP or school placement "in a timely manner," these were only procedural violations of no consequence unless "they result in a denial of FAPE." But this boils down to saying that any obligation Newburyport may have incurred by failing to meet its statutory obligations in a timely way in the past is erased by the Does' move that eliminates obligations it would otherwise have had going forward. It is enough to say here that this demotion of the timeliness requirement is not supported by the authority Newburyport cites. The opinion in Roland M. v. Concord Pub. Sch., 910 F.2d 983 (1st Cir. 1990), states only that "[b]efore an IEP is set aside there must be some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits." Id. at 994. The Does' claim is fairly

read as saying that a procedural inadequacy, untimeliness, did compromise their son's right to the guaranteed education.[2]

As to the claim for attorneys fees, the Does argue that they are entitled to reimbursement under the provision of the IDEA for a discretionary award of fees to a "prevailing party," 20 U.S.C. § 1415 (i)(3)(B), which they claim to be by virtue of the determination of the state appeals board in August 2009 that the school selected by Newburyport in the IEP it then proposed was unsuitable. The issue here, of course, is not the merits of the Does' claim, which Newburyport's brief addresses, but the effect of their leaving Newburyport after the action by the appeals board. While their move would obviously affect any claim the Does might make for prospective relief from any failure to provide an IEP overing the period after their removal, it did not moot the claim for fees incurred in seeking the administrative order issued before the move, based on a finding that Newburyport had failed to do its part to produce an adequate IEP. While we express no opinion on the soundness of the prevailing party claim, which the district court did not reach, the district court summary judgment appears to

---

[2]The second case Newburyport cites, <u>Murphy</u> v. <u>Timberlane Reg'l Sch. Dist.</u>, 22 F.3d 1186 (1st Cir. 1994), is primarily about laches or limitation periods for claims against an education authority. As to IEP adequacy, it holds that an administrative delay that deprived a disabled student of free appropriate public education for two years is a ground for liability under the IDEA. <u>Id.</u> at 1196. It makes no suggestion that less egregious delays could not also give rise to liability.

rest on a legal theory at odds with this court's prior holding under a comparable prevailing party statute, 42 U.S.C. § 1988 (b), that eligibility for a fee award is not lost even when subsequent developments render a claim moot overall, Diffenderfer v. Gomez-Colon, 587 F.3d 445, 454-55 (1st Cir. 2009).  That case cited and quoted from United States v. Ford, 650 F.2d 1141, 1144 (9th Cir. 1981): "[T]he question of attorney's fees is ancillary to the underlying action and survives independently under the Court's equitable jurisdiction," Diffenderfer, 587 F.3d at 452 (alteration in original).  Thus, "in the mootness context, a 'prevailing party' is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties *prior* to the intervening act of mootness." Id. at 453.  If, therefore, the administrative order did make the Does "prevailing parties" before they moved, they were still prevailing when they left town.

The judgment is vacated in each case, which is remanded for further proceedings consistent with this opinion.  Costs are taxed against Newburyport Public Schools.